U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

AUG 1 2 2010

CLERK, U.S. DISTRICT COURT

By _____
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| LONNIE LEE GARRETT, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:09-CV-624-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Lonnie Lee Garrett, TDCJ-ID #1186282, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

In 2002, Garrett was charged with intoxication assault with a deadly weapon and aggravated assault of a public servant with a deadly weapon causing serious bodily injury in cause number 0857492R in the 372nd Judicial District Court of Tarrant County, Texas. (Clerk's R. at 7) The indictment also included a habitual offender notice. (*Id.*) In 2003, Garrett was reindicted on the charges, and his trial commenced on July 22, 2003. After trial, Garrett pled true to the habitual offender allegation, and the trial court assessed his punishment at thirty years' confinement. (*Id.* at 130)

The state appellate court summarized the factual background of the case as follows:

> At 1:40 a.m. in Arlington, Texas, [Garrett] drove on to a wet and slippery entrance ramp to Interstate 30, lost control of his pickup truck, and hit a firefighter, Kurt Kundert, who was putting cones and flares out on the road to signal that an accident had occurred. Kundert and Officer Brian Hamilton were replacing flares that had burned out and adding additional flares and cones because prior to [Garrett]'s loss of control, at least two other cars had slid through the area marked with the flares and cones.
>
> When [Garrett]'s truck came to a stop, Hamilton pulled [Garrett] out of the vehicle. Hamilton smelled alcohol and asked [Garrett] to perform field sobriety tests. In Hamilton's opinion, [Garrett] failed the tests, so he arrested him. After [Garrett] arrived at the police station, he again performed the field sobriety tests, which he passed. At the jail, Hamilton heard [Garrett] say that it was not his fault that he hit the firefighter because the firefighter ran out in front of him.
>
> [Garrett] was charged with aggravated assault of a public servant with a deadly weapon causing serious bodily injury, aggravated assault of a public servant with a deadly weapon causing bodily injury, and intoxication assault. At trial, the State waived the intoxication assault charge. The trial court instructed the jury that "[t]he actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant." After eight hours of deliberation spanning two days, the jury found [Garrett] guilty of aggravated assault of a public servant causing serious bodily injury, but there was no deadly weapon finding.

*Garrett v. State*, 159 S.W.3d 717, 718-19 (Tex. App.–Fort Worth 2005).

The Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals affirmed the judgment of the court of appeals. *Id.* at 721; *Garrett v. State*, 220 S.W.3d 926 (Tex. Crim. App. 2007). Garrett also filed a postconviction application for writ of habeas corpus in state court, raising the issues presented herein, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. *Ex parte Garrett*, Application No. WR-71,833-02, at cover.

## D. ISSUES

Generally, in thirteen grounds, Garrett claims there was no evidence of serious bodily injury (Ground One) and he received ineffective assistance of trial and appellate counsel (Grounds Two - Thirteen). (Petition at 7-7j12)

## E. RULE 5 STATEMENT

Thaler believes that Garrett has sufficiently exhausted his state remedies on the issues presented as required by 28 U.S.C. § 2254(b).

## F. DISCUSSION

### 1. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to

3

clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, typically it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Sufficiency of the Evidence*

Garrett claims, absent eye-witness testimony, medical records, or testimony of the emergency and medical providers, there is no evidence, save for Kundert's own testimony, of the element of serious bodily injury. (Ground One). (Pet'r Memorandum of Law at 4-5)

The Texas Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or

impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46)

(Vernon Supp. 2009). As a matter of state law, victim testimony regarding the injuries he suffered

as a result of the offense is sufficient evidence to prove bodily injury. *Ex parte Bolton*, 619 S.W.2d

166, 167 (Tex. Crim. App. 1981).

The state habeas court cited to the following testimony by Kundert regarding his injuries:

> "My right leg, the – in your lower right leg, there's a – you've got the tibia,
> which is the big bone. It has a metal plate both top and bottom. There are two
> different metal plates on the tibia. And the tibia down by the ankle has got a metal
> plate. So I've got three metal plates in my right leg, 20 screws are in there. Left knee
> meniscus damage, which had to be operated on . . . It's the knee. It's the padding
> between the knee joints. The meniscus is like an o-ring in there, and that was torn.
> And we tried to rehab it, and later on I had to have it surgically repaired...
>
> [My leg] was broken. I mean, the purpose, of course, is to mend it, you know,
> put it together. They don't take [the metal plates] out unless they bother you is what
> I've been told. And they were – well, they had to tape my foot to the other foot when
> they took me to the hospital, so, I mean, it was busted pretty bad. And my right
> shoulder, they had to go in and clean that up. Also, there were three tendons severed,
> two at the bicep and one at the tricep. The front muscle is the bicep. There's two
> tendons that were severed there and one in the muscle in the back. And I've lost my
> sense of smell and sense of taste. My olfactory, there's one nerve basically, it has
> been damaged.
>
> Initially, I lost 25 percent of hearing in my right ear, but that came back. I've
> got a torn retina in my left eye and I have to wear glasses for extended reading, but
> that's – we're still working on that. And that's it. Knee, leg, shoulder..."

(State Habeas R. at 92)

Based on this testimony, and additional testimony from Kundert, the state court found that

Kundert had undergone five surgeries, may never regain his sense of smell or taste, would have to

retire if his sight did not improve, was unable to walk as well as he had before, and was still impaired

in terms of his "bodily members and organs" at the time of trial as a result of his injuries. (*Id.* at 92-

93) Based on its findings, the court concluded that as a matter of due process, Kundert's testimony

was sufficient to prove bodily injury and was more than "some" evidence that Kundert suffered serious bodily injury as a result of the incident. (*Id.* at 99-100)

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence. The standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). When reviewing sufficiency-of-the-evidence claims against the underlying conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. Under *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo,* 513 U.S. 298, 330 (1995). Instead, determining the weight and credibility of the evidence is within the sole province of the jury. *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir. 1992). Courts view any required credibility determinations in the light most favorable to the guilty verdict. *United States v. Wise,* 221 F.3d 140, 154 (5th Cir. 2000). They do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999).

Assuming the jury believed Kundert's testimony of the nature and extent of his injuries, a rational jury could have determined beyond a reasonable doubt that Kundert suffered serious bodily injury. The state court's determination is not contrary to or an unreasonable application of the *Jackson* standard.

### 3. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. *Strickland*, 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Garrett's ineffective assistance claims were reviewed on the merits under the *Strickland* standard and denied by the state courts. Under such circumstances, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland,* or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Pondexter v. Dretke,* 346 F.3d 142, 145-46 (5th Cir. 2003); *Haynes v. Cain,* 298 F.3d 375, 379-82 (5th Cir. 2002). Under this standard, the state courts' application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry,* 540 U.S. 1, 4 (2003).

Garrett claims he received ineffective assistance of court-appointed trial and appellate counsel. He claims trial counsel was ineffective by (1) waiving his pretrial motions in limine, (2) failing to object when the prosecutor committed the jury to use a mandatory presumption, (3) failing to introduce medical evidence and records, (4) failing to object to the court's refusal to define "protracted loss or protracted" at the jury's request, (5) failing to object to the prosecution's introduction into evidence unauthenticated and uncertified documents, (6) failing to object to the prosecution's introduction of false evidence in the form of a preliminary weather report, (7) failing to request a jury instruction on the requirement of "voluntary act or omission," and (8) failing to cross-examine Kundert on the issue of serious bodily injury. Garrett further claims he was "constructively" denied effective counsel because counsel withheld evidence that may have exonerated him.

The state habeas court held a hearing by affidavit and, based largely on counsel's affidavits, entered findings refuting Garrett's claims. (State Habeas R. at 83-89, 90-99)  Applying the *Strickland* standard to those findings, the state court concluded Garrett had failed to prove he received ineffective assistance of counsel or to show a reasonable probability that the outcome of his trial or appeal would have been different but for counsel's alleged acts or omissions. (State Habeas R. at 86, 99-107). The Texas Court of Criminal Appeals likewise denied Garrett's claims on the findings of the habeas court. Garrett has failed to rebut the findings of fact by clear and convincing evidence. Thus, deferring to the those findings, the state courts' denial of Garrett's claims is not contrary to or involve an unreasonable application of *Strickland* or objectively unreasonable, given the evidence at trial.

Garrett claims trial counsel was ineffective by waiving his pretrial motions in limine as to the admissibility of extraneous evidence of intoxication and by failing to request a jury instruction on the issue. (Pet'r Memorandum at 5-6) David Pearson, who was originally appointed to represent Garrett in the case, filed sixteen pretrial motions on Garrett's behalf, including two motions in limine, a "Motion for Pretrial Evidentiary Hearing to Determine Admissibility of Extraneous Offenses," and a "Motion to Instruct State's Counsel Concerning Extraneous Transactions and Offenses." After Pearson's withdrawal, Tim Moore was appointed to represent Garrett. (Clerk's R. at 75-76) In reply to Garrett's claim, counsel testified in his affidavit that he adopted the motions filed by previous counsel and that the motions were not waived. (State Habeas R. at 87-88)

The record further reflects that on the day of trial, counsel made an oral motion in limine that before the state attempted to elicit any testimony or evidence of Garrett's intoxication at the time of the incident, the court rule on the admissibility of the testimony or evidence. (RR, vol. 3, at 5-6) The following exchange occurred:

| [Prosecutor]: | Judge, I'll tell you it's my intention to mention this during opening so we might as well get a ruling on that. |
| [The Court]: | Okay. |
| [Defense Counsel]: | Well, it's my contention, Judge, that if – in the indictment, they are alleging basically four different ways of being reckless, and that's obviously by driving at a speed that was unsafe for the road conditions, by failing to maintain a single lane, by failing to keep the vehicle on the roadway, and by failing to slow the vehicle sufficiently to negotiate a curve in the roadway. There's no mention in there of intoxication. And it would be my argument that any mention of intoxication or opinion evidence by these officers is not relevant, and under 403, the prejudicial effect greatly outweighs any kind of probative value. |
| [Prosecutor]: | Excuse me a minute. May I have just a moment? |
| [The Court]: | Yes. |

(Brief Pause)

[Defense Counsel]:     I'll withdraw my Motion in Limine, Judge.

Given the state's position at trial that Garrett's intoxication contributed to the incident, the state habeas court found evidence that the officer smelled alcohol on Garrett's breath, that Garrett failed the field sobriety tests, and that Garrett was driving while intoxicated, having lost some control of his mental and physical capabilities in the officer's opinion, was relevant to the trial. Accordingly, the court concluded that it is not unreasonable for an attorney to withdraw a motion in limine after a discussion off the record where there is an indication that the motion would be denied, absent evidence or authority that the motion would have been granted. (State Habeas R. at 94-95, 100) Indeed, counsel's withdrawal of the motion in limine was reasonable given that, following the discussion off the record, counsel could have reasonably determined that the state would have easily been able to establish the evidence of intoxication was relevant and not barred. Counsel is not ineffective for failing to block evidence that is clearly admissible. *Romero v. Lynaugh*, 884 F.2d 871, 879 (5th Cir. 1989).

Garrett claims counsel was ineffective by failing to object when the prosecutor committed the jury to use a mandatory presumption. (Pet'r Memorandum at 7-8) Under § 22.02 of the Texas Penal Code, a defendant "is presumed to have known the person assaulted was a public servant . . . if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant . . . ." TEX. PENAL CODE ANN § 22.02(c) (Vernon Supp. 2009). Garrett asserts that the prosecutor improperly commented on this presumption during voir dire and closing argument and that the jury was improperly charged on the issue. (Pet'r Memorandum at 7-8)

Constitutional due process prohibits the state from using evidentiary presumptions in a jury charge if their effect is to relieve the state of its burden of persuasion on an essential element of the offense. *Francis v. Franklin*, 471 U.S. 307, 313 (1985); *Coleman v. Butler*, 816 F.2d 1046, 1048 (5th Cir. 1987). A mandatory presumption instructs a jury that it must infer the presumed fact if the state proves the predicate facts. Such a presumption is unconstitutional. *Coleman*, 816 F.2d at 1048. On the other hand, "[a] permissive inference suggests to the jury that it may, but need not, draw an inference if the state proves the predicate facts." *Id.*

The reporter's record of the voir dire proceedings is under seal in the state trial court, however, counsel testified in his affidavit that he did not object to the state's comments on the presumption during voir dire because he did not feel the state was committing the jury to use a mandatory presumption. (State Habeas R. at 88) The state habeas court entered findings consistent with counsel's testimony and concluded the state did not ask any commitment questions because the only question the state asked the venire was whether anyone had any questions regarding the presumption. (State Habeas R. at 95-96) Deferring to the state court's factual findings, the court's resolution of the issue is not contrary to or an unreasonable application of *Strickland*. Counsel is not required to make frivolous objections. *Green v. Johnson,* 160 F.3d 1029, 1037 (5th Cir. 1998); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

During closing argument, the prosecutor stated: "He was a firefighter. You know from the presumption, he's dressed as a firefighter." (RR, vol. 5, at 113) Further, the jury was instructed on the mandatory presumption in the jury charge. (Clerk's R. at 120) Specifically, the charge instructed the jury that "[a] person is presumed to have known the person assaulted was a public servant if the

11

person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. (*Id.*)

This issue was raised on direct appeal. The Second Court of Appeals concluded that, although the trial court properly instructed the jury on the presumption, it failed to include an instruction effectively converting the mandatory presumption into a permissive presumption as required by § 2.05(a)(2) of the Texas Penal Code. TEX. PENAL CODE ANN. § 2.05(a)(2) (Vernon Supp. 2009). The court determined, however, that the error was harmless, as later did the Texas Court of Criminal Appeals, based on the following reasons:

> Our review of the evidence reveals that [Garrett], a short time after Complainant was struck by [Garrett]'s vehicle, referred to Complainant as a firefighter. Additionally, the record and statements of counsel do not indicate that [Garrett]'s awareness that Complainant was a firefighter was a contested issue. Nor does the record indicate that [Garrett]'s awareness that Complainant was engaged in the lawful discharge of his official duties was a contested issue at trial, although the record does not contain an admission that [Garrett] was aware of this circumstance. The record does reflect that Complainant was putting out cones and flares and dressed in distinctive clothing that [Garrett] recognized as that of a firefighter. It also reflects that two police cars and a fire engine, all with their emergency lights flashing, were visible at the accident scene at the time [Garrett] drove into it.

*Garrett*, 159 S.W.3d at 721.

Similarly, the state habeas court concluded, absent evidence that Garrett was unaware that the victim was a firefighter, he had failed to prove there was a reasonable probability that the jury would have acquitted him or convicted him of a lesser charge had the jury charge not included the mandatory presumption. (*Id.* at 103)

Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous). The inquiry is not whether

there was prejudice to the petitioner, or whether state law was violated, but whether there was prejudice of constitutional magnitude. *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986). Assuming the instruction in question is unconstitutional, habeas corpus relief is not warranted if the error is harmless. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993); *O'Neal v. Morris,* 3 F.3d 143, 145 (6th Cir. 1993). A constitutional error is not harmless if it had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 637; *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002). Garret has failed to show that the instruction had a substantial or injurious effect on the jury's decision. Thus, for the reasons noted by the appellate court, the erroneous jury charge was harmless, and counsel's allegedly deficient performance was not prejudicial.

Garrett claims counsel was ineffective by failing to introduce Kundert's medical evidence and records. He speculates that counsel did not introduce the medical records because the records do not reflect what the victim testified to and showed the victim had a history of problems with the same leg injured in the accident. (Pet'r Memorandum of Law at 8-9) Counsel responded in his affidavit that he and Garrett reviewed Kundert's medical records and that the records verified what the firefighter testified to at trial. (State Habeas R. at 88) The state habeas court entered findings consistent with counsel's testimony and concluded counsel properly investigated and reviewed the victim's medical records with Garrett. (*Id.* at 96, 101) Deferring to the state court's factual findings, the state court's resolution of the issue is not contrary to or an unreasonable application of *Strickland*. Mere speculation and unsubstantiated claims do not merit federal habeas relief. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Garrett claims counsel was ineffective by failing to object to the trial court's refusal to define "protracted loss or protracted" at the jury's request. (Pet'r Memorandum of Law at 9-10) In response, counsel testified that "protracted loss" and "protracted" are not defined by law, and, thus, the trial court was correct in not defining the words to the jury. (State Habeas R. at 88) The state habeas court entered findings consistent with counsel's testimony and, relying on state law, concluded that because the phrase was neither statutorily defined nor a term with technical legal meaning the trial court did not err by refusing to define the phrase for the jury. Consequently, the court determined that Garrett had failed to demonstrate that counsel should have objected to the trial court's refusal to define the term, that the jury would not have found that Kundert's loss was "protracted" had the trial court defined the term, or that there existed a reasonable probability that the outcome of his trial would have been different had the court defined the term for the jury. (State Habeas R. at 101, 103-04) Deferring to the state court's application of state law, the state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland*. Because the jury charge was not erroneous, counsel was not ineffective for failing to object to it. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Garrett claims trial counsel was ineffective by failing to object to the state's introduction into evidence unauthenticated or uncertified documents in the form of X-rays of Kundert's lower right leg and ankle, in violation of Texas Rules of Evidence 803(6) and 902(10). (Pet'r Memorandum of Law at 11; RR, vol. 6, State's Ex. 16-17) Garrett asserts that he believes the plates, pins and screws reflected in the X-rays were surgically inserted in Kundert's leg as a result of an old injury and not from the injuries he sustained as a result of the incident on March 2, 2002. In response, counsel testified that Kundert testified they were X-rays of the plates installed in his leg because of this

incident and that there was absolutely no evidence that Kundert fabricated the evidence. (State Habeas R. at 88) The state habeas court entered findings consistent with counsel's testimony and concluded Garrett had failed to prove there exists a reasonable probability that the outcome of the proceeding would have been different had counsel objected to admission of the X-rays. The state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland.* Even if counsel was deficient for not objecting to admission of the X-rays, Garrett cannot establish the prejudice prong of the *Strickland* standard, in light of Kundert's testimony.

Garrett claims trial counsel was ineffective by failing to object to the state's introduction of a false and unauthenticated preliminary weather report, not generated by any state agency, resulting in a violation of his right to confront witnesses and a violation of Texas Rule of Evidence 902(1). (Pet'r Memorandum of Law at 11-13, 15-16; RR, vol. 6, State's Ex. 12) According to Garrett, no jury would have found him guilty of a reckless act had they known "the rain was mixed with snow and the temperature was upper teens and winds 20 to 30 mph." (Pet'r Memorandum of Law at 12-13) In reply, counsel testified that the weather report was not false and that none of the witnesses who were interviewed or who testified indicated the rain was mixed with snow that night. (State Habeas R. at 89)

At the time the preliminary weather report in question was introduced into evidence, the prosecutor explained–

> State's Exhibit 12 is a log of weather data for the night of March – the early morning hours for the day, March 2nd, 2002. It begins, year 2002, March the 2nd, beginning at the hour of 1:00 a.m. through the hour 24.
> There are a variety of columns across the top. There is a definition or a glossary for those codes on the fourth page. It's showing from the National Weather Service data that at 1:00 a.m. on March the 2nd, the temperature was 56 degrees, the wind speed was four miles an hours, the visibility was four miles, and the

15

accumulated precipitation at 1:00 a.m. was 0.00. There was noted that there was mist.

At 2:00 a.m. on March 2nd, the temperature was 44 degrees, visibility was 1.5 miles and there was point four hundredths of an inch. At 2:00 a.m., there was mist and rain and so on. For the rest of that 24-hour period, the data is listed.

(RR, vol. 3, at 207)

The state habeas court entered findings consistent with counsel's testimony and concluded Garrett had failed to prove that the report was false, that the state lied to the jury, or that counsel should have objected to the exhibit. (State Habeas R. at 96, 102) The record supports the court's determination of the issue. By all witness accounts, it was merely raining at the time of the incident. (RR, vol. 3, at 21, 53, 69, 76, 78, 187, 236; RR, vol. 4, at 43, 52) The state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland.* Counsel is not required to make meritless objections. *Clark*, 19 F.3d at 966.

Garrett claims counsel was ineffective by failing to request a jury instruction that he must have engaged in a voluntary act to commit the offense. (Pet'r Memorandum of Law at 13-14). Garrett urges that he did not intend to hit the fireman, that the collision was merely an accident, and that "engaging in the conduct of driving one's vehicle is not a voluntary conduct prohibited under [the] Penal Code." In response, counsel testified that he did not request an instruction on voluntariness because he did not feel it was necessary to do so. (State Habeas R. at 89)

Under § 6.01(a) of the Texas Penal Code, "[a] person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE ANN. § 6.01(a) (Vernon 2003). Under state law, voluntariness is defined as "the absence of an accidental act, omission or possession." *Alford v. State,* 866 S.W.2d 619, 624 (Tex. Crim. App. 1993). Typically, a voluntary act plus a culpable mental state is required for a person's conduct to

16

be criminal. TEX. PENAL CODE ANN. §§ 6.01, 6.02. Thus, "a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires." *Id.* § 6.02.

The state habeas court entered findings consistent with counsel's testimony and concluded that Garrett voluntarily engaged in the conduct of driving his vehicle and that his conduct was not rendered involuntary because he did not intend to hit the fireman. (State Habeas R. at 102) Because Garrett failed to demonstrate he was entitled to a voluntary act instruction, the court concluded that counsel's representation was not deficient because he did not request such an instruction. Deferring to the state court's findings and application of state law, the court's resolution of the claim is not contrary to or an unreasonable application of *Strickland*. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Garrett claims counsel was ineffective by failing to cross-examine Kundert on the "serious bodily injury" element of the offense. (Pet'r Memorandum of Law at 14-15) In response, counsel testified that he did not cross-examine Kundert regarding his medical records because the medical records verified his injuries and because the defensive theory was that the incident was an accident, not a criminal offense, therefore the element of serious bodily injury was not an issue. (State Habeas R. at 89) The state habeas court entered findings consistent with counsel's testimony and concluded counsel's decision not to cross-examine Kundert regarding his injuries was the result of reasonable trial strategy. (*Id.* at 102) The state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland*. Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *Strickland*, 460 U.S. at 689.

Garrett claims he was "constructively" denied counsel because counsel withheld exculpatory evidence in the form of a copy of the Arlington Police Department's "total accident summary report" and the Fort Worth Star-Telegram's weather section for the date in question, reflecting the weather conditions were much worse than the state's "false" weather report indicated. (Pet'r Memorandum of Law at 15-16) In response, counsel testified that he did not raise the issue because numerous witnesses verified that the weather was raining and wet that night. (State Habeas R. at 89) The state habeas court entered findings consistent with counsel's testimony and concluded Garrett had failed to prove a reasonable probability existed that the outcome of his trial would have been different had counsel presented additional evidence of the road conditions, in light of the testimony that it was Garrett's unsafe driving for the road conditions that led to the collision. (*Id.* at 104) The state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland*. Counsel is not ineffective by not introducing additional evidence that would have been duplicative of evidence of the road conditions already admitted.

Garrett claims he was denied effective assistance of appellate counsel because counsel failed to (1) assist him in filing a motion for new trial, (2) to point out relevant information in the record pertaining to the state's use of a mandatory presumption in appellant's brief, and (3) to challenge the sufficiency of the evidence to prove "recklessness" or "serious bodily injury." (Pet'r Memorandum of Law at 18-21) As to his first claim, appellate counsel testified as follows;

> [I]t was my professional opinion that a Motion for New Trial was not necessary here. However, from the record, it is evident that Mr. Garrett filed a pro se Motion for New Trial on August 28, 2003, and attached his affidavit in support. From his affidavit, it is clear that one of Mr. Garrett's complaints regarding a Motion for New Trial was his belief that trial Counsel had been ineffective for allowing the state to present false evidence regarding the weather conditions on [the] night in question. However, numerous witnesses testified at trial to the weather conditions

on the night in question, including police officers at the scene as well as bystanders and passers-by, and none testified that the weather at the time of the accident was freezing; the witnesses were subjected to cross-examination by Mr. Garrett's trial counsel. Moreover, the State presented a documentary record from the Southern Regional Climate Center which also showed that the weather was not freezing at the time of the accident. Finally, it is questionable whether establishing the fact that the weather was freezing at the time of the accident would have even benefitted Mr. Garrett at trial, as the state could have reasonably argued that Mr. Garrett's act of driving 40 to 50 miles per hour (which was the speed shown at trial) on frozen roads is manifestly reckless.

Mr. Garrett additionally felt that a Motion for New Trial was necessary to prove that his trial counsel was ineffective for failing to contest the serious bodily injury element of the offense. Mr. Garrett felt that the victim's testimony was not enough to show serious bodily injury. However, Texas law is clear that the victim's testimony alone can be enough evidence to show serious bodily injury, and the evidence presented at trial was sufficient to show serious bodily injury.

Finally, Mr. Garrett felt that a new trial motion was necessary to show trial counsel's ineffectiveness in not presenting witnesses which had been interviewed and subpoenaed for trial. I was informed by Mr. Garrett of his concern regarding said witnesses, and contacted trial counsel soon after I was appointed to the case to determine whether this issue would require action on my part. Trial counsel indicated that the witnesses were unable to provide information that could benefit Mr. Garrett's case, and could actually have a negative effect on the case. Trial counsel having interviewed the witnesses, aware of the testimony which they could present, [] chose not to present them because of trial strategy. Moreover, in his affidavit, Mr. Garrett was unable to state exactly what the witnesses' testimony would be, and how such testimony would have benefitted him at trial. Thus, a Motion for New Trial was not appropriate under the circumstances presented here, as there was no new nonfrivolous evidence sufficient to support such a motion.

(State Habeas R. at 84)

The state habeas court entered findings consistent with counsel's testimony and concluded counsel's decision not to file a motion for new trial was the result of reasonable trial strategy. (*Id.* at 105) The state court's resolution of the claim is not contrary to or an unreasoanble application of *Strickland.* Furthermore, Garrett asserts he wished to raise one or more of the claims set forth in this petition in his motion for new trial. As these issues have been found to be without merit, there is not

a reasonable probability a motion for new trial would have been granted. Accordingly, Garrett suffered no harm as a result of counsel's failure to assist him in filing a motion for new trial.

Garrett claims appellate counsel was ineffective by failing "to include all relevant evidence related to the Mandatory Presumption" with appellant's brief. (Pet'r Memorandum of Law at 19-20) Specifically, Garrett complains that appellate counsel should have pointed out all three instances in which the state "committed" the jury to the mandatory presumption–during voir dire and closing argument and in the jury charge. In reply, counsel testified as follows:

> [I]n the initial Appellate Brief filed on Mr. Garrett's behalf, I raised the two issues which I believed would merit reversal: 1) the jury charge constituted a mandatory presumption which violated Mr. Garrett's right to a fair trial, thus causing Mr. Garrett to suffer egregious harm; and 2) the jury charge violated Mr. Garrett's right to a trial by jury as guaranteed by the Sixth and Fourteenth Amendments. The mandatory presumption issue was fully and comprehensively briefed. However, the only aspect of the mandatory presumption issue which I felt would merit a reversal on appeal concerned the jury charge, since there were not any objections at voire [sic] dire or trial regarding the mandatory presumption to sufficiently preserve the matter for appeal. Thus, on appeal, we were limited to complaining about the jury charge under the egregious harm standard of review applicable to un-objected-to jury charge error as promulgated by *Almanza*. Mr. Garrett has further raised in his Application a complaint regarding my failure to include in the Brief any argument regarding an alleged commitment question posed by the prosecutor at trial. In response, I do not believe the prosecutor's statement can be construed to be a commitment question; but, in any event, there was no objection to the prosecutor's statement, thus, there is no issue preserved for appeal.

(State Habeas R. at 85 (footnote and citations omitted))

The state habeas court entered findings consistent with counsel's testimony and concluded the state's discussion regarding the mandatory presumption during voir dire was not improper. Thus, the court determined Garrett had failed to prove counsel should have argued the issue on appeal or to demonstrate a reasonable probability that the appellate court would have reversed his conviction

if counsel had included the state's voir dire as evidence of the improper mandatory presumption. (*Id.* at 106) The state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland*. Appellate counsel is generally not ineffective for failing to raise issues not preserved for appeal. In this case, counsel reasonably focused on the strongest appellate arguments. *Ellis v. Lynaugh*, 873 F.2d 830, 839 (5th Cir. 1989).

Garrett claims appellate counsel was ineffective by failing to challenge the sufficiency of the evidence to prove recklessness or serious bodily injury or to properly raise the issues. (Pet'r Memorandum of Law at 20-212) In reply, counsel testified as follows:

> [B]y Supplemental Brief and Amended Supplemental Brief each filed with the Second Court of Appeals, the sufficiency of the evidence to prove recklessness was challenged. Further, as discussed above, I believe that the evidence presented at trial was sufficient to show serious bodily injury. Therefore, Mr. Garrett's complaints are unfounded.

(State Habeas R. at 85)

The state habeas court entered findings consistent with counsel's testimony and concluded that, because the evidence was sufficient to prove Kundert suffered serious bodily injury, Garrett could not demonstrate counsel should have raised the issue or that he would have prevailed on appeal had counsel raised the issue. (*Id.* at 105) The state court's resolution of the claim is not contrary to or an unreasonable application of *Strickland*. The failure to raise a seemingly frivolous issue on appeal does not constitute ineffective assistance of counsel. *Jones v. Barnes*, 463 U.S. 745, 753-54 (1983).

Additionally, the state habeas court, having found counsel did raise a sufficiency of the evidence claim on the issue of recklessness in his supplemental brief, concluded Garrett had not

shown counsel should have raised the issue in his initial brief or a reasonable probability that the

outcome of his appeal would have been different had counsel raised the issue in his initial brief.

(State Habeas R. at 105-06)  The court further noted that under state law,

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his
> conduct or the result of his conduct when he is aware of but consciously disregards
> a substantial and unjustifiable risk that the circumstances exist or the result will
> occur.  The risk must be of such a nature and degree that its disregard constitutes a
> gross deviation from, the standard of care that an ordinary person would exercise
> under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN § 6.03(c).

The state habeas found that there was evidence that Garrett's intoxication may have

contributed to the accident, and, as a matter of state law, "the actions of driving under the influence

of alcohol can be used to show a conscious disregard of a substantial risk."  The state court's

resolution of the claims is not contrary to or an unreasonable application of *Strickland*.  Appellate

counsel is not required to raise every conceivable argument urged by his client on appeal, regardless

of merit.  *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).  Moreover, the record supports the court's

determination that counsel raised a sufficiency of the evidence claim on the element of recklessness.

Garrett presents no compelling argument or evidence to rebut the state courts' adjudication

of his ineffective assistance claims, and there is nothing in the record to suggest that but for counsel's

alleged acts or omission, the jury would have acquitted Garrett or that he would have prevailed on

appeal.  The totality of the representation provided by both counsel was well within an objective

standard of reasonableness.  Garrett has not met his burden of overcoming the strong presumption

that his trial and appellate counsel were competent.  Moreover, even if he could show deficient

performance, he has not demonstrated that but for counsel's acts or omissions the outcome of his trial or appeal would have been different.

## II. RECOMMENDATION

Garrett's petition for writ of habeas corpus should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until September 1, 2010. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until September 1, 2010, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August **12**, 2010.


JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE